District Court, basically what the District Court ruled is incorrect according to this court's opinion in Imhoff v. Al Pacino, which came in 2015, but also the FCC's letter brief submitted in Palm Beach v. Saris, which is an opinion the 11th Circuit issued in 2015. So in 2015 we have this court and the 11th Circuit both agreeing that the advertiser in a fax advertisement is considered the sender of its own advertisement and principles of vicarious liability do not apply. The District Court had ruled that because the defendant outsourced its fax campaign to a third party, the defendant was not the sender of the fax, that somebody else physically sent it, and also ruled that plaintiff couldn't show vicarious liability because defendant was somehow assured by this broadcaster that it was okay for them to send faxes to people that they had prior relationships with, 5,000 plus in Ohio. The TCPA prohibits the use of a fax machine to send an unsolicited advertisement, and all of the faxes here were unsolicited. It's undisputed that they weren't unlawful. In 1995, before the faxes were sent, the FCC issued a binding interpretation of the word sender because there was some, the statute doesn't say who can be sued when it says it's, that you can, that it's unlawful to use a fax machine to send an unsolicited advertisement. It doesn't say who can be sued when one is sent. So in 1995, the FCC issues an order saying, the entity, quote, the entity on whose behalf facsimiles are transmitted are ultimately liable for compliance, unquote, and quote, fax broadcasters are not liable for compliance, unquote. So in 1995, the FCC says in a binding order that the advertiser is liable and the broadcaster is not. That definition was codified in 2006 after these faxes were sent, but this court ruled in Al Pacino that that wasn't the change in law, that it was just a, that it was consistent with the prior 1995 uncodified interpretation. So Imhoff was about faxes that were, that occurred after the regulation, and Palm Beach versus Saris was about faxes like in this case that occurred before the if your goods are advertised on a fax and you hired somebody to send the fax, you as the advertiser are ultimately liable with compliance with the statute, not somebody else. You can't delegate it to somebody else. And in this case, you know, defendant admits in deposition, their former president of the company, Gajdos, said that the faxes were sent on defendant's behalf. They were sent on their behalf. It was sort of a leading question of a sort of a legal term of art, right? I'm not sure. I mean, people talk about all the time, did somebody do something on your behalf? I mean, it's not really a legal term though, under the, I don't know, one's a legal term and another is a colloquialism or? Colloquialism, yeah. I mean, they may not be the same, that's all. I mean, they might not be, but I don't think that's what the Saris court means. They say if the thing advertises your stuff and they sent it on your behalf, meaning they weren't your worst enemy sending it, you know, if they weren't sent on the defendant's behalf, whose behalf were they sent on? Is it your position that the court applied the wrong standard of law? Yes. And therefore there should be reversal, but your relief is reversal for a ruling under the correct standard of law or for trial? I mean, what's the relief you want? Ultimately, we would contend that the class should be certified and summary judgment should be entered for the class. There's no question that these facts... You filed motion for summary judgment too? No, we didn't because Rule 23 requires that class certification occur first. So the defendant moves for summary judgment and then we come here and if this court reverses, then we'll go back to the trial court and they'll say, well, plaintiff can't get no summary judgment as appropriate. But legally, the district court was wrong and the defendant is wrong. Legally, as a matter of law, the defendant is liable for these faxes. And then factually, I'm just trying to give you some background... Can we decide that... I mean, say I agree with you that the district court applied the wrong legal standard. Can we rule today that you are entitled to relief as opposed to further proceedings or a trial on issues? I mean, are there issues of fact that would need to be resolved if we ruled in your favor? I really don't think there is an issue of fact. It's just a question of the defendant hasn't admitted conceded liability. The case is pleaded as a class action. The rules say we're supposed to resolve that issue first. But of course, the answer to your question, I'm not really sure because parties file cross motions all the time. Sometimes a judge says, look, I don't need you to do that in a declaratory judgment about insurance coverage. I only need one and I'll rule how it goes. Other judges say, no, you each need one or I can't give you the relief you wanted, even though I didn't give him. So I'm not really sure. The easiest thing for us, if we had agreed with you, is simply reverse and remand for further proceedings. Okay, I understand. No, is that? No, that might be the easiest thing for you, but the point of me getting into some of the factual background is just to show you that it's also the right result. I mean, some of these cases, they start from the perspective of this poor guy just didn't know what was going on and he was tricked into sending faxes or whatever. But this guy says, look, I didn't even, they told me it was legal because they sent it to their office. Did you even know there was a law about advertising, fax advertising? No. And if somebody's telling you that something about advertising is legal, why doesn't that put the guy on some kind of notice that he should probably look at it? Because if I go to Walmart and buy something and they say it's legal to buy this, I say, wait a minute, what do you mean? Why would you tell me it's legal? And in fact, B2B itself is basically ignorant of the law too. They say, gee, we thought if we faxed people repeatedly and told them they could make it stop if they asked us to stop, then whoever didn't ask to stop is given permission for faxes. So he kind of tries to outsource his, not just the faxing, but his compliance with the law. But then even the broadcaster says, gee, we didn't know. And in this case, this is a unique factual situation because after he sends the first fax broadcast, he gets letters from Ohio lawyers, he's in Ohio, Ohio lawyers saying you violated the statute, here's the statute, here's what it says. Even one of He got calls and then he says he talked to B2B and they say, oh, don't worry about it, they don't know what they're talking about. And so he sends three or 4,000 more. But the district court said, erred by applying these vicarious liability principles and said, well, how can you ever prove that they acted within the scope of their employment or and these sorts of things. And the defendant also said that he made it clear why he sent these. It was because for a couple hundred dollars, he got some new customers out of it. And fax advertising really is one of the cheapest forms of advertising, except that it's illegal and if you get caught, then it's really expensive. But the district court should be reversed because it applied the wrong legal standard and it should have followed Saris and definitely should follow this court's opinion, it's Al Pacino. So if there's no other questions, I'd like to reserve my time. Thank you. Good morning, Your Honor. May it please the court, my name is Al Bauer and I'm here on the facts in this case I believe are undisputed. My client was duped by an unscrupulous business. B2B lied to my client and intentionally misled my client. Not about statements of law or the legality of the faxing, they misrepresented the facts. What they told my client is that these faxes would only be sent to persons who had previously agreed to send the faxes and that they had permission to send these faxes. That's undisputed. It's not just my client's testimony, it's in multiple documents that B2B provided to my client and also to documents that B2B sent to lawyers who raised complaints about the faxes. That's undisputed in this case. B2B knew when it made these representations that the representations were not true. This isn't a mistake of fact by B2B, it's an intentional misrepresentation designed to further their scheme of getting my client to retain their services. It's undisputed. So B2B knew it was not true but unfortunately my client did not. So I believe that the question really for the court and the question raised by plaintiff's counsel is what standard, what legal standard applies to this conduct and whether Congress and the FCC intended a client, to hold a client like in the position of my client liable. Now what plaintiff relies on of course is the Imhoff decision, which I'm sure this court is familiar with. The big problem with the reliance on the Imhoff decision is that the Imhoff decision addressed faxes that occurred after August 1, 2006. These faxes both occurred before August 1, 2006. Why does it matter? Because there's an FCC regulation that first becomes effective after August 1, 2006. Now plaintiff claims, look, there was no change between what was said in 1995 and what was said in 2006. It's all consistent. It's all the same rule. It's been the rule since the beginning of time, since 1995. I think the plaintiff did read one of the regulations. I want to read the two regulations. So after August 1, 2006, here's how the FCC defined the term sender. The term sender means the person or entity on whose behalf a facsimile, advertisement, or sent, or whose goods or services are advertised or promoted in the unsolicited advertisement. So for the first time, effective August 1, 2006, the FCC regulation adds, or whose goods or services are advertised or promoted in the unsolicited advertisement. Prior to that time, the FCC had never indicated that the mere presence of your name in an ad would be sufficient to hold you liable. So regulated parties would have no way of knowing this. Here's what the FCC said in 1995. The entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisement. Did the district court apply the 1995? It did not, your honor. It applied vicarious liability. It applied common law. Common law principles. You're arguing today that the district court should have applied 1995, the interpretation? No, your honor. I'm not. I'm arguing that they should have applied vicarious liability. Why are you arguing this then? Well, because I want to show the difference first between the regulation effective after 2006. You say they don't apply. Either one of them applies, right? I think the on behalf of standard in 1995 is vague. We don't know what it means. Okay. Well, there's no... Why did the district court not err in failing to apply the 1995 standard? Because the FCC told us what on whose behalf means. They told us through a United States Department of Justice brief that was filed on behalf of the FCC in April of 2004. And that was a consolidated class action. There were 14 different class actions. All the defendants in that class action were challenging the constitutionality of the TCPA with respect to faxing. The district court here looked solely to common law, right? Correct, your honor. And so you're saying the district court came to the right result for the wrong reason that even if the district court had looked to the 95 regulation that the district court would have ruled the same way? I'm trying to figure out what your argument is. Correct, your honor. I'm saying that the 1995 order on whose behalf is synonymous with vicarious liability. Well, okay. Shouldn't, I mean... What's your authority for that? The FCC's brief filed in April of 2004 where they said the TCPA incorporates the bedrock legal principle of common law, vicarious liability. My authority is also the Meijer United States Supreme Court, which says when a statute is silent, we assume that it incorporates principles of common law, vicarious liability. My authority is Best Foods versus United States, where courts had adopted a standard of liability for circle cases that went beyond common law principles of vicarious liability. Didn't the 11th Circuit in that Palm Beach Golf Center case reject your argument? Your honor, they did reject vicarious liability. With the 11th Circuit, they didn't go into detail about the fact that the faxes were sent prior to August 1, 2006. The FCC in the letter brief that provided to the 11th Circuit relied on the August 1, 2006 regulation, and I believe that the 11th Circuit repeated that mistake in terms of relying on the new regulation despite the fact that the faxes were sent prior to the August 1, 2006 regulation. In this case, vicarious liability does not play, isn't that right? That is correct, sir. Isn't that a problem? I believe that it would be a problem for the plaintiff, or at least the district court found that that was a problem for the plaintiff, because if the plaintiff wanted to rely on vicarious liability, the district court said they did need to plead that in the complaint. Obviously, it's not a problem if it doesn't apply. Correct, your honor. The district court relied on an FCC ruling in what, the Dish Network ruling? It did, your honor. And the Dish Network ruling actually supports what I'm saying, which is that on behalf liability can be synonymous with vicarious liability. This court in the Emhoff decision sort of rejected the Dish Network as applicable to this fax broadcast problem. I mean, the Dish was relating to the telemarketing. Correct, your honor. But what the Dish Network brings to my argument is the fact that the FCC is construing on whose behalf language. And they say that on whose behalf, at least with respect to the TCPA as it relates to telemarketing, on whose behalf means vicarious liability. So all we have when we send these faxes, we have the 1995 memorandum in order that says on whose behalf. That's a standard that's undefined. It's not defined in the case law. It's not defined by the FCC. It's just hanging out there as on whose behalf. Then the FCC comes in in 2004, pursuant to the DOJ's brief and says, no, no, the TCPA is not vague. On whose behalf, they don't say on whose behalf, but they say the TCPA incorporates common principles of vicarious liability. And they say that in a fax case. And they say it in 2004, less than a year, I believe, before we send the first faxes. Maybe a little over a year. I think they said it's consistent with... That's what they said subsequently. That's not what they said in that April 2004 brief. They say it incorporates common law principles of liability. They say that the TCPA does. In light of its silence. And that's how the FCC gets around the vagueness challenge to the constitutionality of the TCPA. So you have the FCC to survive a constitutional challenge saying, no, no, the TCPA with respect to faxing incorporates common law principles of liability. Then years later, long after we've sent the faxes, they say, no, what we meant when we said on whose behalf is actually some broader, unknown standard that courts are still struggling with to understand what on whose behalf means in terms of the standard. In terms of what plaintiff relies on to argue merely that the goods and services being advertised is enough. First of all, it's the Imhoff decision. Again, that decision relies on the regulation that didn't become effective until after the faxes that issue were sent. It relies on the FCC regulation itself, which plaintiff acknowledges in its response brief at page 11, does not apply to the faxes that were sent. And it relies on the letter to the FCC's letter to the 11th circuit, which again referenced and relied on the plain language of the August 1, 2006 regulation. And there's obviously a big difference between what was said in 1995 and the regulation August 1, 2006. So probably strict liability is out because the faxes here occurred prior to August 1, 2006. I agree, your honor. Then the question is, is the proper standard vicarious liability, which is what the district court said, or is it this on behalf of, which would almost certainly require us to remand and let the district court sort that out in the first instance? You're correct, your honor, and I believe that the FCC answered your question in that August, or I'm sorry, April 2004 brief when it said the TCPA incorporates common law principles. Of course, the fact the FCC says that doesn't mean that we are bound by that. No, but I do believe that it should give insight into what the FCC meant by on whose behalf, should also give insight into what regulated parties might construe on whose behalf to meet. So if you're a regulated party and you see on whose behalf, what does that mean to you in 1995, in 2004? I wonder, has it come up that it strikes me that this B2B is somewhat a fly-by-night sort of sole proprietorship and it had a Romanian company called McCall or something like that with a guy using a pseudonym, and I mean, was it reasonable for your client to rely on B2B's assurances that this was all legal? Well, certainly in hindsight, it was not, your honor. At the time, there was no reason. I don't think there were red flags. You're not spending a lot of time thinking about who you're engaging to do advertising with. They had experience with the faxes. They made representations about the faxes. There's nothing in particular, at least in my mind, as it's occurring that would give rise to concerns. The only other thing I would like to address briefly is that the plaintiff... When you say there was no reason to think there was anything to give rise to concern, there were complaints made by people who were receiving these faxes. That's correct, your honor. There were, in the first broadcast in November of 2005, there were 3,365 faxes that were sex offenders. Successfully transmitted according to the plaintiff. We received three complaints, two from the same attorney. They were form letters. We forwarded those... One attorney sent you a complaint and threatened to sue. He did, your honor. And we forwarded all of those complaints to B2B, three complaints. They were all resolved, apparently, by B2B. B2B was not your attorney. Why did you do that? Because they had agreed to indemnify us for any claims and because the claims in the letter were contrary to what B2B... To the facts that B2B told us. So you have three total complaints. You have B2B say, don't worry if you get complaints, we'll take care of them. We send them to B2B. B2B takes care of them. As far as we know, B2B doesn't pay a dime on these and the attorneys go away just as B2B's letter predicts that they're going to do. And certainly there's no... Despite the threats of a lawsuit, there was no lawsuit against my client. There was no settlement paid by my client. No money was paid at all by my client. So the complaints... First of all, it's less than, what, 0.1% complaints. And we believe at the time there's 5,000 faxes sent, you get three complaints. There can be three mistakes when you're doing something 5,000 times. We forward the complaints to B2B. They're all resolved without us paying a dime. We have no reason to think that... You didn't know if they were resolved because you didn't follow up to see what happened after you forwarded them along. But we never hear anything more from them and still haven't to this day. Not from any of the three people that complained. So it all works exactly as B2B tells us it's going to work. And it actually inspires confidence that B2B told us the truth, right? These three lawyers who have these great claims go away. And keep in mind, if B2B is regular in the business of doing this, we only pay them $180 to send the fax. So they couldn't have done so profitably. We paid $180 for the fax broadcast. If they're regular getting these complaints and actually having to pay money, it's not a good business model. It's not going to work. Thank you, Your Honors. Thank you. Listening to my brother this morning, and your question, Your Honor, about the on behalf of, I think it really is more of a... I think it's clear that it does mean if you hire somebody to send advertising by fax, that means it's on your behalf. Because listening to my brother argue, the 1995 order says, the entity on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule, banning unsolicited fax ads, and fax broadcasters are not. And what their argument is, is that if the fax doesn't comply with the rule, then it's not on behalf of. But that turns it around. It says, if the fax is sent on your behalf, then you must make sure it complies with the rule. They say, well, it didn't comply with the rule, therefore it wasn't on our behalf. That really makes it very difficult. If you can't prove these guys violated this law, everybody should outsource it to McCaw in Romania. He says there's no red flags, but if you read the fax itself at the bottom, it says, this is document 39-2 in the record at page 879. If you do not remove your number, it will certify that you give permission to continue to send faxes to this number. So right there, that's just not a proper statement. That's not true. It's not a negative option statute. You don't get the fax until people beg you to stop, or sue you to stop, or hire Ohio lawyers to threaten you. It also says the fax the guy approved and said, this is my fax. It says things like, the above sponsor is not affiliated with, it's about helping flood victims, and it talks about some company in Romania, and nothing comes up. Nothing, because it's so cheap. And he doesn't care, and he just sticks his head in the sand, essentially. And now I'm hearing an argument that the guy's relying on the accounting, outsourcing brief filed by the DOJ, which in an argument that was rejected by the district court, but he doesn't follow the law, or read the law, or research the law, or Google junk fax advertising. Doesn't do any of that, but should be defended by the DOJ's brief that argued the statute is constitutional. The issue wasn't who is the sender, it was about the constitutionality of the thing, and a DOJ brief doesn't overrule a binding order of the FCC. And the fact that you can have vicarious liability too, doesn't mean you can't have direct liability. If somebody who sends somebody, who hires somebody to send advertisements by fax, is directly primarily liable, ultimately liable, according to the FCC, for compliance. What if you just hire somebody, a marketing crew, and you think, well, they'll probably just do some TV ads, or maybe something on the bus, or whatever, and they send some junk faxes, and you say, well, I never agreed the faxes. Those are illegal. They could be vicariously liable if you can prove that, and that's why you can have room for both. It's not inconsistent for the FCC to have a lawyer say in 2004 that vicarious liability is available, because the FCC had already said, ultimate liability rests with the advertiser. It's always been about, is the broadcaster also liable? The FCC's letter brief in Saris, there's a footnote too, where they say the question is, the advertiser's always liable, and sometimes the broadcaster can be jointly and severally liable. And in parentheses, it says, with the advertiser. So it's not about who do we have to sue, because we could sue B2B in this case instead, and they would say, well, gee, we thought it was okay to send these faxes because of this and because of that, and then I guess we just put it all on the people who have fax machines, and it should be up to them to prevent that. But not really in our society, where Congress passed a law 20 years ago that says, don't do this. And the FCC keeps saying, don't do it, don't do it. Courts keep saying, don't do it, and people are still doing it. It isn't undisputed that B2B said anything about consent or permission. I've read the Gajdo's deposition several times. I don't see, he never says, they told him permission or consent. He's asked, did they tell you permission or consent? And he says, they said it was legal because they know these people or they send them faxes all the time. But at the end of the day, your honors, the court should reverse the district court for following the Palm Beach versus Saras District Court opinion that was reversed by the 11th Circuit and for saying that vicarious liability principles govern this case when the FCC said in 1995 that it's direct liability on the advertiser. Regardless of the regulation in 2006, we don't have to hang our hat on, does this fax advertise their stuff? Because we have the primary, the first part of that is that they hired him to send it. He says, that's my fax. Yeah, I hired them to send this on my behalf. Now, on my behalf, legally or versus colloquially, in any event, we don't have to turn to the regulation. This is the fax he hired them to send. They sent it, it violated the law. It's on him to make sure it complies. My time is up, I'm sorry. Thank you. Thank you, your honor. Your case is submitted.